USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/10/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
:
GREGORY LIONS, :
:
Plaintiff, : 1:24-cv-7181-GHW
:
-v- : ORDER OF DISMISSAL
: WITH LEAVE TO REPLEAD
NEW YORK STATE OFFICE OF CHILD :
SUPPORT ENFORCEMENT, *and* HUMAN :
RESOURCES ADMINISTRATION, :
:
:
Defendants. :
:
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

In 2002, the custodial parent of Plaintiff Gregory Lions' sons filed a petition for paternity in Staten Island. Plaintiff alleges that, since at least 2017, the State and City of New York have been garnishing his wages and imposing other penalties in attempt to collect his outstanding child support arrears. Because Plaintiff's claims against the State are barred by the Eleventh Amendment, and because the claims against the City are, in effect, an appeal from a state court judgement, the Court dismisses this action but grants Plaintiff 30 days' leave to amend the Complaint.

I.     BACKGROUND

    A.  Facts[1]

Plaintiff alleges that on or about January 29, 2002, the custodial parent of his two sons filed a petition for paternity in Staten Island. Compl. at 5. He alleges that "since 2017, the New York Office of Child Support Enforcement[2] has been garnishing my wages,[3] and intercepting my Federal

---
[1] The facts are drawn from Plaintiff's Complaint. Dkt. No. 1 (the "Complaint").
[2] Plaintiff lists both the "New York State Office of Child Support Enforcement" and New York City's "Office of Child Support Enforcement" as defendants, but does not specify which agency he is referring to. *See id.* at 1–2, 4. Given Plaintiff's *pro se* status, the Court reads the complaint as alleging that both agencies garnished Plaintiff's wages.
[3] Plaintiff also alleges that the "Office of Child Support Collections Enforcement garnished my social security." *See id.* at 4.

tax refund money . . . ." *Id.* Plaintiff also alleges that on September 28, 2023 a $3,500 "bail settlement from New York State" was taken "as a 'deduction for outstanding child support liens' for 'arrears' in my child support case." *Id.* He also contends that his "right to receive a passport" has been withheld. *Id.* Finally, Plaintiff alleges that "[t]he Office of Child Support Enforcement never notified me that I had become an obligor for an arrears contract" and "never furnished me with the terms of interest either." *Id.* at 4.

Plaintiff argues that "no collection actions should have taken in the first place" because "the original family court petition" stated that "'[t]he petitioner does not wish to make application [sic] for child support enforcement services.'" *Id.* at 5. Plaintiff also contends that "[t]he New York State IV-D child support law" violates due process and "is not a valid debt under the law," because "the state has been found to not properly notify individuals of child support proceedings . . . ." *Id.* at 4. In his prayer for relief, Plaintiff asks the Court to "order the NY State Office of Child Support Enforcement to (1) cease all arrears collection efforts" and "(2) [r]eturn $12,805.10 of arrears that it has illegally garnished from my wages, settlements, and other income." *Id.* at 6. He asserts that "[t]he actions of the New York State Office of Child Support Enforcement have negatively impacted my ability to pay my bills and support myself." *Id.* at 5. He adds that "[t]he constant mail notices from OCSE with the ever increasing amount, monthly interest of $527.93, currently at $96,787.78 has caused me a constant level of mental anguish as well. I am currently unemployed and receiving unemployment, due to run out the first week of December 2024, and social security benefits as my sole source of income." *Id.*

### B. Procedural History

Plaintiff Gregory Lions filed this action *pro se* on September 27, 2024. *See id.* Plaintiff resides in New Jersey. *Id.* at 2. He paid the fees to bring this action. Plaintiff sues the New York State Division of Child Support Enforcement (the "NYS DCSE"), and the New York City Office of

2

Child Support Enforcement (the "NYC OCSE") (collectively, "Defendants").[4]  *See* Compl. at 1–2.

Plaintiff's Complaint expressly asserts claims under 42 U.S.C. § 1983 ("Section 1983") for alleged violations of the Due Process Clause of the Fourteenth Amendment, and the Eighth Amendment's Excessive Fines Clause.  *See* Compl. at 3.  Because Plaintiff is proceeding *pro se*, the Court construes the complaint liberally to assert additional claims for Defendants' allegedly incorrect enforcement of Title IV-D of the Social Security Act ("Title IV-D"), and under state law, including for violations of the New York State Constitution's due process and excessive fines clauses.  N.Y. Const. art. I, §§ 5 & 6.

## II.   STANDARD OF REVIEW

The Court is obliged to construe *pro se* pleadings liberally.  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  The Court must also interpret *pro se* complaints "to raise the strongest arguments that they *suggest*."  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

Even when the *pro se* plaintiff has paid fees to bring a civil action, the Court must dismiss the action *sua sponte* if the Court determines that it lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

The Court may also dismiss an action *sua sponte* for failure to state a claim on which relief may be granted, "so long as the plaintiff is given notice and an opportunity to be heard."  *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (citation and internal quotation marks omitted),

---

[4] The caption of Plaintiff's Complaint lists the New York State Office of Child Support Enforcement as the defendant, which the Court understands to be the NYS DSCE, the state agency responsible for supervising the child support enforcement program.  Compl. at 1.  Page two of the Complaint also lists the Human Resources Administration, Office of Child Support Enforcement as the defendant.  *Id.* at 2.  The Court construes this to be in reference to the OCSE, which is an agency within the city Human Resources Administration, Department of Social Services.  *See O'Brien v. Hansell*, 2010 WL 1371366, at *4 (E.D.N.Y. Mar. 31, 2010) (explaining the city, state, and federal statutory and regulatory scheme governing child support enforcement).

*abrogated on other grounds*, *Murphy v. Hughson*, 82 F.4th 177 (2d Cir. 2023). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Rule 8 requires a complaint to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, the Court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

## III. DISCUSSION

The Court must dismiss each of Plaintiff's claims. First, all of Plaintiff's claims against the NYS DCSE are barred by the Eleventh Amendment. With respect to Plaintiff's claims against the NYC OCSE, the Court is barred from reviewing Plaintiff's claims that challenge the family court judgment against him under the *Rooker-Feldman* doctrine. To the extent that Plaintiff asks the Court to modify his child support obligations, the Court must abstain under the domestic relations abstention doctrine. Plaintiff's Complaint also fails to state a claim under Section 1983. Finally, with respect to any parallel state law claims brought under the Court's diversity jurisdiction, the Court is similarly barred from considering those claims under the *Rooker-Feldman* doctrine, and lacks diversity jurisdiction to resolve those claims under the domestic relations exception.

### A. The Eleventh Amendment Bars Plaintiff's Claims Against the State

Plaintiff's claims against the NYS DCSE are barred by the Eleventh Amendment because the NYS DCSE is a state agency. The Eleventh Amendment states the following: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or

Subjects of any Foreign State." U.S. Const. amend. XI; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity. . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original); *see also Green v. Mansour*, 474 U.S. 64, 68, 72–74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). Unless a state waives its immunity, a district court lacks subject matter jurisdiction over claims asserted against the state. *See Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997); *Atl. Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction.").

"[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks and citation omitted); *see also Halderman*, 465 U.S. at 120-21; *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) ("Although the text of the [Eleventh] Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, it has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court." (internal quotation marks and citation omitted)).

Congress has not abrogated the states' immunity for claims under Section 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The NYS DCSE is an agency of the State of New York; it is, thus, an arm of that state and enjoys Eleventh Amendment immunity. *See Dixon v. Jordan*, No. 1:23-CV-9227 (LTS), 2024 WL

37096, at *2 (S.D.N.Y. Jan. 2, 2024). Thus, the Court dismisses Plaintiff's claims against the NYS DCSE under the doctrine of Eleventh Amendment immunity.[5]

### B. Plaintiff's Claims Against the City Are Either Barred or Inadequately Pleaded

#### 1. The OCSE is Not a Suable Entity

The Court must dismiss all claims against the NYC OCSE because, as an agency of the City of New York, the NYC OCSE is not an entity that can be sued. N.Y. City Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismiss all claims against the NYC OCSE.

However, in view of Plaintiff's *pro se* status, the Court substitutes the City of New York as the proper defendant pursuant to Federal Rule of Civil Procedure 21. *See Obah v. Dep't of Admin. for Children's Servs.*, 2024 WL 2848903, at *5 (S.D.N.Y. May 2, 2024), *report and recommendation adopted sub nom. Obah v. Dep't of Admin. for Child. Servs.*, 2024 WL 2848883 (S.D.N.Y. May 30, 2024). Consequently, although the Court dismiss all claims against the NYC OCSE, the Court substitutes the City of New York (the "City") in its place.

#### 2. Plaintiff's Federal Claims Against the City Must be Dismissed

With respect to Plaintiff's Section 1983 claims against the City, the Court is barred from reviewing Plaintiff's claim that challenges his family court judgment under the *Rooker-Feldman* doctrine, and must abstain from considering Plaintiff's claim seeking modification of his child

---

[5] "The landmark case of *Ex parte Young* created an exception to [the] general principle [of Eleventh Amendment immunity] by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Green*, 474 U.S. at 68 (internal citations omitted). Even when construed liberally, however, Plaintiff's Complaint cannot be read as challenging the constitutionality of a state official's action such that the Eleventh Amendment does not apply.

support order under the domestic relations abstention doctrine. Any other claims arising under Section 1983 must be dismissed because Plaintiff has failed to plead the existence of a municipal policy that led to any alleged harm.

> i. **_The Rooker-Feldman Doctrine Bars Review of the State Court Proceeding_**

The Court is barred from reviewing Plaintiff's Section 1983 claim that challenges his underlying family court proceeding because that claim is, in effect, an appeal from the state family court's child-support order. "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005).

The Second Circuit "has articulated four requirements that must be met for *Rooker-Feldman* to apply: (1) the federal-court plaintiff must have lost in state court[;] (2) the plaintiff must complain of injuries caused by a state-court judgment[;] (3) the plaintiff must invite district court review and rejection of that judgment[;] and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Dorce*, 2 F.4th at 101–02 (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)) (alterations in original and internal quotation marks omitted). "The fact that Plaintiff is challenging the constitutional adequacy of the proceedings is of no help to him." *Davis v. Westchester Cnty. Family Court*, 2017 WL 4311039, at *8 (S.D.N.Y. Sept. 26, 2017); *see generally Hoblock*, 422 F.3d at 87 ("If [a] father sues in federal court . . . on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.").

"Courts have applied this doctrine to bar claims challenging the enforcement of child-support orders by garnishment, seizure, and suspension of a child-support debtor's driver's license." *Ganiyu v. Lopez*, 2020 WL 1467356, at *3 (S.D.N.Y. Mar. 25, 2020) (collecting cases); *see also Davis*, 2017 WL 4311039, at *8 ("Courts have repeatedly invoked *Rooker-Feldman* in cases in which plaintiffs challenge family court decrees setting child support arrears"); *Hall v. Clinton Cnty.*, 2020 WL 1923236, at *4 (N.D.N.Y. Apr. 21, 2020); *Williams v. NYU Hosp. Ctr. Fin. & Payroll Support*, 2020 WL 1878119, at *3 (S.D.N.Y. Apr. 14, 2020) (citing *Remy v. New York State Dep't of Taxation and Fin.*, 507 F. App'x 16, 18 (2d Cir. 2013) (summary order)).

Here, the *Rooker-Feldman* doctrine bars the Court from reviewing any claims arising from Plaintiff's assertion that the family court violated his right to due process, and that the garnishment of his wages constitutes an excessive fine. All four of the *Rooker-Feldman* factors are met in this case. First, the Court can reasonably infer that Plaintiff "lost in state court," *Dorce* 2 F.4th at 101, as his wages have been garnished since at least 2017, his federal tax refund seized, his right to receive a passport suspended, and the state issued a "bail settlement" in 2023 "as a 'deduction for [Plaintiff's] outstanding child support liens' for 'arrears' in [his] child support case." *See* Complaint at 5.

Second, Plaintiff "complain[s] of injuries caused by a state-court judgment." *See Dorce*, 2 F.4th at 101. "Once a child support order has been entered . . . [a]ny past due support is treated as a judgment by operation of law and is enforceable in the same manner as a judgment." *O'Brien*, 2010 WL 1371366, at *5 (internal citations omitted). Here, Plaintiff complains that the garnishment of $12,805 in wages and income was illegal, and asks the Court to enjoin further collection of his $96,787 unpaid balance, all of which stem from the state's child support order against him. *See* Compl. at 5–6. In seeking such an order, Plaintiff 'invite[s]" the Court to review and reject a family court judgment that "rendered before the district court proceedings commenced," *Dorce*, 2 F.4th at 101, given that the family court petition was filed against Plaintiff in 2002 and collections began in or

8

around 2017.[6]  *See* Compl. at 5.  Consequently, under the *Rooker-Feldman* doctrine, the Court is barred from reviewing Plaintiff's claim that challenges his underlying family court proceeding because that claim is, in effect, an appeal from the state family court's child-support order.

### ii.     The Domestic Relations Doctrine Requires Abstention

The Court must also abstain from considering Plaintiff's claim seeking modification of his child support order under the domestic relations abstention doctrine.  In *American Airlines, Inc. v. Block*, the Second Circuit held that "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts."  905 F.2d 12, 14 (2d Cir. 1990) (holding that court erred in not abstaining from adjudicating dispute over ex-spouse's maintenance obligations); *see Khalid v. Sessions*, 904 F.3d 129, 133 (2d Cir. 2018) ("Family law, after all, is an area of law that federal courts and Congress leave almost exclusively to state law and state courts."); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) ("[T]he existence of a distinct abstention doctrine for certain domestic relations disputes is supported by the Supreme Court's longstanding recognition—in a non-diversity case involving a child custody dispute—that the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.") (citations and internal quotation marks omitted).

Here, Plaintiff's challenge to the amount of his child support obligations falls squarely within the domestic relations doctrine.  *See, e.g.*, *Simmons v. NYS Dep't of Soc. Servs.*, 2019 WL 5810307, at *4 n.2 (S.D.N.Y. Nov. 5, 2019) ("[E]ven if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing."); *Myers v. Sara Lee Corp.*,

---

[6] Plaintiff does not allege that the child support proceedings are still pending.  However, to the extent that the proceedings are ongoing, this Court would likely not intervene.  *See Younger v. Harris*, 401 U.S. 37 (1971).

2009 WL 10706711, at *10 (E.D.N.Y. Apr. 13, 2009) ("[T]he income execution for which enforcement is sought consists of an ongoing support obligation that is subject to modification by the Family Court.  Enforcement by this court would thus require interference with the ability of the Family Court to modify ongoing child support obligations, and abstention would be mandated here . . . .").  Accordingly, the Court must abstain from reviewing Plaintiff's family court proceeding to the extent that he asserts a claim seeking modification of the underlying family court child support order.

### iii.  *The Complaint Fails to State a Claim Against the City Under Section 1983*

Plaintiff's Complaint also fails to state a claim against the City under Section 1983 because he does not allege the existence of a municipal policy that gave rise to the alleged violation.  *See Harris*, 572 F.3d at 73; *Wachtler*, 35 F.3d at 82.  Section 1983 states in relevant part the following:  "Every person who, under color of any statute . . . custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  "Under the standards of *Monell v. Department of Social Services,* a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (internal citation omitted); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).

Here, Plaintiff fails to establish the existence of a municipal custom, policy, or usage that would support a claim under Section 1983.  First, Plaintiff takes issue with "[t]he New York *State*

10

IV-D[7] child support law" and alleges that the state law violates due process because "the *state* has been found to not properly notify individuals of child support proceedings . . . ." Compl. at 4 (emphasis added). Consequently, on its face, Plaintiff challenges a state—not a municipal—policy.

Plaintiff also fails to allege that the City's enforcement of the state's IV-D program can be construed to be a municipal policy under *Monell*. The Second Circuit has "establishe[d] the framework for assessing asserted constitutional violations arising from municipal enforcement of state law." *Juzumas v. Nassau Cnty., New York*, 33 F.4th 681, 688 (2d Cir. 2022). "First, [the Court] ask[s] whether the municipality had a 'meaningful choice' as to whether it would enforce the law. If it did, then [the Court] ask[s] whether the municipality adopted a 'discrete policy' to enforce the law that represented a 'conscious choice' by one of its policy makers. If both conditions are met, then the municipality exercises a sufficient degree of autonomy to face liability for its policy choices." *Id.* (quoting *Vives v. City of New York*, 524 F.3d 346, 351–53 (2d Cir. 2008)).

Plaintiff does not allege any facts that permit the Court to conclude that the City, in enforcing New York State's IV-D program, adopted a municipal custom, policy, or usage. *See Jones*, 691 F.3d at 80. Nor does he offer facts alleging that any municipal policymaker made a conscious choice to enforce the State's child support proceedings in a particular manner that violated Plaintiff's rights. *See Vives*, 524 F.3d at 351–53. For example, Plaintiff makes no allegations that the City

---

[7] Title IV-D of the Social Security Act is a federal law that "funds [state] agencies tasked with collecting child support payments." *See Chris H. v. New York*, 2017 WL 2880848, at *7 (S.D.N.Y. July 5, 2017), *aff'd*, 764 F. App'x 53 (2d Cir. 2019); *see also Blessing v. Freestone*, 520 U.S. 329, 334–35 ("[E]ach State's Title IV–D agency . . . must conform to federal guidelines . . . each participating State must enact laws designed to streamline paternity and child support actions."); *see generally Roger of the Fam. Forrest v. 45 C.F.R.§ 75.2 IV-D Contractor Steve Banks*, 2019 WL 4194332, at *5 (S.D.N.Y. Aug. 30, 2019) ("Title IV-D underwrites States' child-support efforts and requires States 'to establish a comprehensive system to establish paternity, locate absent parents, and help families obtain support orders.'") (citing *Blessing*, 520 U.S. at 333-34); *Myers v. Sara Lee Corp.*, 2009 WL 10706711, at *4 (E.D.N.Y. Apr. 13, 2009) (discussing Title IV-D). In New York, the NYS DCSE "supervises the child support enforcement program in the State," and "[e]ach local social services district . . . is required to take all steps necessary to establish, collect, and enforce child support orders." *See O'Brien*, 2010 WL 1371366, at *4. In New York City, the NYC OCSE is the body "that enforces child support orders entered in the five counties that constitute the City of New York." *Id.*

enacted a policy of withholding notice to individuals in child support proceeding; that the City's failure to notify individuals was "sufficiently widespread and persistent;" or that "supervisory authorities must have been aware of the practice . . . ." *See Jones*, 691 F.3d at 81.

Second, that Plaintiff was allegedly "never notified that [he] had become an obligor for an arrears contract" or "never furnished" with "the terms of interest" also fails to allege the existence of a municipal policy because he only alleges one instance of conduct. Compl. at 4. "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "*Monell*'s language makes clear that it expressly envisioned [liability for] officials 'whose acts or edicts may fairly be said to represent official policy,' and whose decisions therefore may give rise to municipal liability under Section 1983." *Id.* (internal citations omitted). The Second Circuit has held, however, "that municipal liability under Section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483.

Here, Plaintiff does not allege any additional facts showing that the single instance of conduct—that he was allegedly not notified of his child support obligations—constituted an official policy by the City to withhold notice: he does not allege that an official made a deliberate choice to engage in a practice to withhold notice from child support obligors, when compared to alternative methods; nor does he allege that an official responsible for establishing final policy made a decision to enact a policy that led to the alleged failure to provide him with notice. Plaintiff's Complaint therefore fails to adequately state a claim against the City under Section 1983. The Court dismisses Plaintiff's claims against the City, but grants Plaintiff leave to replead his claim under Section 1983

12

against the City in an amended complaint.[8]

### iv.  There is No Private Right of Action Under Title IV-D to Enforce Substantial Compliance

Finally, to the extent that Plaintiff seeks to enforce Title IV-D's requirement that New York State operate its child support program in "substantial compliance" with Title IV-D, he may not because the statute does not give rise to a private right of action.[9]  If a [s]tate does not 'substantially comply' with the requirements of Title IV–D," the state may be "penalize[d] . . . ." *Blessing*, 520 U.S. at 335.  "Because 'the requirement that a [s]tate operate its child support program in 'substantial compliance' with Title IV-D was not intended to benefit individual children and custodial parents' the provision [does] not create a federal right and, therefore, [is] not enforceable via Section 1983." *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 511 (2d Cir. 2006) (quoting *Blessing*, 520 U.S. at 343).  Although "the possibility that some provisions of Title IV-D give rise to individual rights" is not "foreclosed," Title IV–D "contains no private remedy—either judicial or administrative—through which aggrieved persons can seek redress" for a state's alleged failure to "substantially comply" with federal IV-D guidelines.  *See Blessing v. Freestone*, 520 U.S. at 346–49 (holding that plaintiffs could not, through a Section 1983 action, seek a declaratory judgment that Arizona's IV-D

---

[8] The Court notes, however, that should Plaintiff seek to replead, his *Monell* claims may not be timely.  "Section 1983 actions in New York are subject to a three-year statute of limitations running from the time a 'plaintiff knows or has reason to know of the injury' giving rise to the claim." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (internal citations omitted).  "Plaintiff ultimately would have to show that he neither knew nor should have known that the City's challenged conduct resulted from a policy or custom until on or after . . . three years before this action was filed.  Any Amended Complaint would be subject to dismissal if it were plain on its face that Plaintiff knew or should have known of the alleged policy or custom before that date." *See Chris H*, 2017 WL 2880848, at *6.  The Court does not reach whether Plaintiff's claims are barred by the statute of limitations; Plaintiff alleges that his wages have been garnished since 2017 but indicates that that a new bail settlement was taken against him as recent as September 2023.  Compl. at 5.
[9] "The structure of each State's Title IV–D agency, like the services it provides, must conform to federal guidelines.  For example, States must create separate units to administer the plan and to disburse collected funds, each of which must be staffed at levels set by the Secretary.  If a State delegates its disbursement function to local governments, it must reward the most efficient local agencies with a share of federal incentive payments.  To maintain detailed records of all pending cases, as well as to generate the various reports required by federal authorities, States must set up computer systems that meet numerous federal specifications.  Finally, in addition to setting up this administrative framework, each participating State must enact laws designed to streamline paternity and child support actions." *See Blessing*, 520 U.S. at 334–35 (internal citations omitted).

program violated the "substantial compliance" requirements under Title IV–D, including that state agency failed to take adequate steps to obtain their child support payments, because in that context Title IV-D "contains no private remedy"); *see also Smith v. Stack*, 2024 WL 54292, at *8 (S.D.N.Y. Jan. 2, 2024) ("[B]ecause Plaintiff does not have a private right of action to sue the defendants for their allegedly incorrect enforcement of Title IV-D, the Court dismisses these claims for failure to state a claim on which relief may be granted."); *Simmons*, 2019 WL 1988673, at *3 (same). Thus, Plaintiff cannot pursue a private action to require New York State to "substantially comply" with Title IV-D.

### 3. Plaintiff's State Law Claims Are Dismissed

#### i. The Court Declines Supplemental Jurisdiction

Having dismissed all of Plaintiff's federal claims, the Court declines to accept supplemental jurisdiction over any residual state law claims, including claims that Defendants violated the New York State Constitution's due process and excessive fines clauses. *See Triestman*, 470 F.3d at 474 (noting that pro se pleadings must be interpreted "to raise the strongest arguments that they suggest") (internal quotation marks and emphasis omitted). A federal district court may decline to exercise supplemental jurisdiction over claims under state law if it "has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded on other grounds by* 28 U.S.C. § 1447(c). Accordingly, having dismissed Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any claims under state law that may be implied from Plaintiff's pro se pleading. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (noting the "discretionary nature" of the exercise of supplemental jurisdiction).

### ii. The Court Lacks Diversity Jurisdiction Over Plaintiff's Residual State Law Claims

Finally, the Court lacks diversity jurisdiction over Plaintiff's residual state law claims. Plaintiff is a resident of New Jersey. *See* Compl. at 2. He is suing New York defendants. *Id.* at 1–2. And it appears that the amount in controversy exceeds $75,000. *See id.* at 5–6. As a result, at first blush, it would appear that the Court has diversity jurisdiction to hear any state law claims that his Complaint can be construed to raise. *See* 28 U.S.C. § 1332. That does not end the story in this case, however.

"Even if Plaintiff[] [was] able to . . . establish diversity of citizenship, the Court would still lack subject matter jurisdiction over this matter pursuant to the *Rooker–Feldman* doctrine." *See Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 513 (D. Conn. 2015), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat. Tr. Co.*, 632 F. App'x 32 (2d Cir. 2016); *see also Andrews v. Citimortgage, Inc.*, 2015 WL 1509511, at *4 (E.D.N.Y. Mar. 31, 2015) ("Even if diversity or federal question jurisdiction were present here, the Court would not exercise jurisdiction because of the *Rooker–Feldman* doctrine.").

Additionally, under "the domestic relations doctrine exception to the court's [diversity] jurisdiction . . . federal courts are divested of jurisdiction in 'cases involving the issuance of a divorce, alimony, or child custody decree.'" *See Hamilton v. Hamilton-Grinols*, 363 F. App'x 767, 769 (2d Cir. 2010) (summary order) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992)); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 622 (2d Cir. 2019) (distinguishing between "the domestic relations '*exception*' to subject matter jurisdiction" in diversity cases and "the domestic relations *abstention* doctrine" in federal-question cases) (emphasis original); *see also Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir. 2002) (summary order) ("We agree with the district court's conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision affirming the

modification of [plaintiff's] child support payments." (citing, *inter alia*, *Ankenbrandt*, 504 U.S. at 703)). Federal district courts must therefore dismiss claims involving domestic relations issues for lack of jurisdiction when asserted under diversity jurisdiction. *See Deem*, 941 F.3d at 621–24.

For the same reasons that the Court must abstain from exercising its federal question jurisdiction, the Court lacks diversity jurisdiction to review Plaintiff's family court proceeding to the extent that the Complaint can be construed to assert claims seeking modification of the child support order based on violations of the New York State Constitution's due process and excessive fines clauses.

### IV. Leave to amend is granted

Plaintiff's claims are dismissed without prejudice. It is the "usual practice" upon dismissing a complaint "to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). That is especially true where, as here, a plaintiff has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court, *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."), and where a plaintiff is proceeding pro se and his complaint is dismissed *sua sponte*, *see Salahuddin*, 861 F.2d at 42–43; *Cuoco v. Moritsugu*, 222 F. 3d 99, 112 (2d Cir. 2000) (explaining that courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated").

Accordingly, Plaintiff is granted leave to amend the complaint. Any amended complaint must be filed within 30 days from the date of this order. If Plaintiff does not file an amended

complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

The Clerk of Court is directed to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated: January 10, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge